## AFFIDAVIT IN SUPPORT OF
## A CRIMINAL COMPLAINT

I, Donald Kopchak, Task Force Officer of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), herein after referred to as Affiant, being duly sworn, do hereby depose and state as follows:

### Affiant's Background and Qualifications

1. Affiant is a duly sworn Task Force Officer of the ATF. As such, Affiant is empowered to conduct investigations of and to make arrests for offenses enumerated in Titles 18 and 21 of the United States Code that is, a task force officer engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.

2. Affiant has been involved in the investigation of various individuals and organizations involved in the illegal manufacturing, distribution, and use of controlled substances and firearm violations.  Affiant has conducted surveillance operations and has become familiar with the methods used by individuals engaged in the illegal manufacturing, distribution, and use of controlled substances and firearm violations. Affiant has been lead investigator or has participated in many criminal investigations involving violations of Ohio drug and firearm laws. Affiant has executed many search warrants related to illegal drug and firearm operations.

3. Based on Affiant's experience, Affiant knows that while some drug traffickers attempt to keep their drug trafficking activities separate from their residences, many drug traffickers conduct their drug trafficking activities at locations where they reside and as a result retain evidence relating to drug trafficking therein. Regardless of where drug traffickers conduct their drug activities, drug traffickers typically keep records, papers, documents and other

evidence of such trafficking offenses at locations where the items can be readily accessed, to include the drug trafficker's place of residence.

4. Affiant also knows that the sale of illegal drugs is mostly conducted on a cash basis and that persons involved in the regular trafficking of drugs often maintain control over significant amounts of currency, as both "working capital" and as "profits", at their places of residence and/or other properties they control.

5. Drug traffickers commonly utilize vehicles to transport drugs and proceeds from drug sales, to include U.S. currency, between various locations. To avoid detection and confiscation, the vehicles used to transport both drugs and currency are often outfitted with hidden compartments designed to conceal the money or contraband.

6. Affiant knows that it is common for drug trafficking organizations ("DTOs") to use cellular telephone text messaging features to communicate with associates relating to the logistics of their drug trafficking business. Affiant is also aware that DTOs commonly use pre-paid telephones, which require little or no subscriber information, to avoid law enforcement detection and interception. Affiant knows that those involved in illegal drug operations or other criminal conduct use slang and/or coded language when communicating about drug matters.

7. Affiant is aware that individuals involved in drug trafficking often maintain records linking them to their trafficking activity and their drug trafficking associates. These records may include notes, records or ledgers of drug sales, past or future shipments, and other records, including telephone records, which identify customers and/or other co-conspirators. These records may be stored physically or digitally on computers or other electronic devices or media. Affiant knows that drug traffickers often maintain such records at their place of residence

even when the residence is not being used to store drugs or to conduct drug sales or other drug activity.

8. Affiant's knowledge of the facts alleged in this affidavit are based on conversations with other law enforcement officers, including: ATF agents/officers; information received from law enforcement databases; and from Affiant's personal participation in the investigation.

9. This Affidavit is offered in support of a Criminal Complaint against Defendants KINDELL SMITH, DRESHAWN MADDOX, DARRELL DOUGLAS, with Title 21 United States Code, Section 846 (conspiracy to distribute controlled substances) Section 841 (possession with intent to distribute and distribution of controlled substances); and, Title 18 United States Code, Section 922(g)(1) (possession of firearm or ammunition by convicted felon). As further detailed below, your Affiant submits that there is probable cause to believe that Smith, Maddox and Douglas, illegally possessed firearm in the Northern District of Ohio.

## **PROBABLE CAUSE**

10. On April 9, 2020, members of SEALE (South East Area Law Enforcement) began a criminal investigation in the narcotics trafficking of Kindell SMITH, a.k.a. "Rico". SMITH is a member of the "8Ave" street gang known to operate in the 5th District of Cleveland, Ohio.

11. On April 9, 2020, members of SEALE assisted the Bedford Police Department (BPD) in regards to a fatal overdose of a female. During the investigation of this fatal overdose, SEALE detectives believed a narcotics trafficker named "Rico" may have supplied the female with the narcotics that caused the female to pass. SEALE was able to identify (814) 844-1780 as a possible phone number for "Rico".

12. On April 14, 2020, a member of SEALE acting in an Undercover (UC) capacity called "Rico" at the aforementioned number and requested to "swing through (purchase narcotics)". "Rico" directed the UC to East 33rd Street and Central Avenue in Cleveland, Ohio. "Rico" further directed the UC to park in the lot at 3209 Central Avenue. "Rico" exited the door of 3209 Central Avenue and entered the UC's vehicle. The UC purchased approximately .5 grams of suspected heroin/fentanyl from "Rico" for $ 40.00, who was later positively identified as KINDELL SMITH. The transaction was covertly audio/video recorded.

13. Affiant avers that while SEALE was conducting their investigation, members of the ATF (Alcohol, Tobacco, Firearms and Explosives), along with APA (Adult Parole Authority), were conducting a separate investigation on Kindell SMITH, who is known as RICO.

14. Affiant avers that during the investigation, SMITH who was on parole supervision cut off his ankle monitored GPS unit, and APA issued a warrant for SMITH. Affiant further avers that during this time SMITH was posting picture on social media. In these phots SMITH was brandishing firearms. SMITH is federally convicted from possession firearms from a Cuyahoga County Case CR-11-555785-F, in which SMITH plead guilty to felonious assault and was sentenced to seven years in prison.

15. Affiant avers that on May 19th, 2020, Detective Griffis contacted Special Agent (S/A) Keith Lewis from the ATF and advised him he was in contact with Kindell SMITH. Agents knew that SMITH was wanted on APA warrant, and cut off his GPS monitor. A FBI/ATF arrest operation for SMITH was planned. It was determined that Det. Griffis would work in an undercover capacity as the driver of the undercover vehicle. Inside the undercover vehicle with

4

Griffis were Det. Stockwell, S.A Biggs and TFO Kopchak, Stockwell, Briggs and Kopchak had police vests on marked with POLICE on the front and back.

16. Affiant avers that Det. Griffis, posing as a drug user called SMITH to set up the heroin deal and Griffis was directed by SMITH to E.152 and Woodworth area. Affiant avers that the investigation plan was formulated where in once SMITH was in the area, and assisting units were able, they would stop SMITH and arrest him based on his APA Warrant.

17. Affiant avers that once in the area of E.152 and Woodworth, SMITH directed Griffis and the UC vehicle to the area of 1320 E.152. Affiant avers that once in that area SMITH called Det. Griffis and told him he was on his way. A few minutes later a Jeep with Ohio plate GGU 4291 pulled next to the UC vehicle. In which you affiant, TFO Kopchak was in the back seat of the UC and was able to observe SMITH in the rear of the Jeep. Your affiant was able to observe three males in the jeep. Affiant avers that SMITH rolled down his window and leaned out and knocked on the UC's driver side window. SMITH knocked three times, Det. Griffis rolled down the window and SMTH handed him a paper fold with suspected heroin. At that time S.A Briggs rolled down his window announced himself as the police and ordered all of the occupants of the jeep to show their hands. Affiant could hear the occupants of Smiths vehicle screaming GO, GO GO. Affiant further avers that as this was going on a Ohio investigative unit pulled behind the Jeep with lights and sirens and then pulled alongside of the jeep. The Jeep accelerated and eventually struck the driver side of the OIU vehicle with its lights and sirens still activated.

18. Affiant avers that this disabled both vehicles and trapped the officers in the OIU vehicle, Agent Mone 9118 from OIU was the driver, and had to exit though the passenger side door. Affiant avers that affiant was already out of the UC vehicle and could see SMITH shoving something under the passenger side seat. Affiant gave SMITH five to six loud commands to show his hands

5

he was not following any commands. Other agents and officers arrived on scene and SMITH was taken out of the rear seat of the vehicle.

19. Affiant avers that the driver was detained and identified as DARRELL DOUGLAS. The front seat passenger was removed and detained and identified as DRESHAWN MADDOX. Affiant advised all three males of their Miranda rights and they stated they understood. Affiant then checked the vehicle and under the passenger side seat, where affiant saw SMITH just seconds before reach down to that exact area, a Glock Firearm with an extended magazine bearing serial number uvr897 was located. Affiant avers that the Glock was positioned with the muzzle facing the front of the vehicle as it would be from a rear seat passenger placing the firearm under the seat. Affiant avers that affiant had a hard time getting the firearm out from the front of the passenger side seat. Affiant avers that he swabbed the firearm for DNA. Affiant avers that the gun was loaded with 6 rounds of 40. Caliber ammunition. Affiant also located a bag a suspected heroin where SMITH was sitting along with a I-Phone, and several bags of marijuana on the passenger side floor board.

20. Affiant avers that affiant advised MADDOX that he was under arrest and going to have a seat in a CPD zone car. Affiant avers that he patted MADDOX down before placing him in the zone car and could a see a plastic bag sticking out of his jeans pants pocket, Affiant patted it down and could feel a golf ball size hard object, which would be consistent with that of crack cocaine. Affiant asked MADDOX what was in his pocket he did not answer him. Affiant further avers that affiant then removed the plastic bag which was crack and another bag of pink pills.

21. Affiant avers that after clearing the vehicle he then advised DOUGLAS that he was under arrest and patted him down and located a large sum of money on his person. Affiant asked DOUGLAS how much money he has on his person and he stated around two thousand. Affiant counted the

6

money in front of him and it was 2,280 dollars. Affiant avers that DOUGLAS asked why he was going to jail, DOUGLAS was informed him that he fled from the police and struck a police car, and his back seat passenger was selling drugs to an undercover police officer. DOUGLAS stated he doesn't know anyone of the guys in the car. Affiant believes that this is not a true statement because DOUGLAS and MADDOX (front seat passenger) are codefendants on prior cases. Affiant further avers that APA was on scene and advised DOUGLAS that he and the other occupants were going to LCI connection with parole violations.

22. Affiant avers that all three males (SMITH, DOUGLAS, MADDOX) were conveyed to Cuyahoga County jail where they were booked and housed. Affiant avers that during this time affiant was monitoring jail calls that were placed in Cuyahoga County jail by DOUGLAS. Affiant avers that during these recorded calls, DOUGLAS told an unknown female that DOUGLAS, SMITH and MADDOX were at a friend's house when SMITH told DOUGLAS he needed to go hit a "Play", which is a common slang for a drug deal. Affiant further avers that during this call DOUGLAS gave further detail and stated that SMITH told him to drive to E.152 to for another "Play". DOUGLAS stated that when he pulled up next to a "Truck"(Griffis Undercover vehicle), SMITH leaned out and started to knock on the window. DOUGLAS stated that he could see police in the truck and even explained on the phone line that "SMITH served the police". Affiant avers that the unknown females asked DOUGLAS why he was being violated by APA. Affiant further avers that DOUGLAS explained to the unknown female that SMITH has a 9mm firearms, with an extended magazine. DOUGLAS gave the unknown female details about that firearm and stated that the firearm was a 9mm but SMITH had it loaded with 40 caliber rounds. DOUGLAS stats that the gun wouldn't even fire because of the wrong rounds.

23. Affiant avers that on May, 26th, lab results were returned from the narcotics that were seized

7

during the arrest. The Cuyahoga County Regional Forensic Science Laboratory returned lab # 2020-002640. Affiant avers that the bag of suspected heroin that was located on the rear seat was positive for Fentanyl and 4-ANPP, the paper fold that SMITH gave to Det. Griffis was positive for Fentanyl and 4-ANPP. The suspected crack cocaine on MADDOX'S person was positive for crack cocaine and the pink pill on MADDOX'S person were positive for Fentanyl and 4-ANPP.

## **CONCLUSION**

1. For the foregoing reasons, your Affiant submits that there is probable cause in support of a criminal complaint against Kindell SMITH, Dreshawn MADDOX, and Darrell DOUGLAS, with Title 21 United States Code, Section 846 (conspiracy to distribute controlled substances) Section 841 (possession with intent to distribute and distribution of controlled substances); and, Title 18 United States Code, Section 922(g)(1) (possession of firearm or ammunition by convicted felon).

Donald Kopchak
Task Force Officer
Bureau of Alcohol, Tobacco, and Firearms

Sworn to via telephone after
submission by reliable electronic
means. Crim.Rules. 4.1; 41(d)(3)

Thomas M. Parker
United States Magistrate Judge
**12:40 PM, Jun 5, 2020**