IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:20-CR-812 |
|---|---|---|
| Plaintiff, | ) | JUDGE PAMELA BARKER |
| v. | ) | |
| KINDELL SMITH, | ) | <u>GOVERNMENT'S TRIAL BRIEF</u> |
| Defendant. | ) | |

Now comes the United States of America, by and through its counsel, Michelle M. Baeppler, Acting First Assistant United States Attorney, Robert F. Corts and Payum Doroodian, Assistant United States Attorneys, hereby submit hereby submits the following trial brief.

**I.** <u>**STATEMENT OF FACTS**</u>

The government expects the evidence to show:

On April 14, 2020, an Undercover Agent (UC) posing as a drug buyer was in contact via phone with "Rico" KINDELL SMITH to arrange the purchase of narcotics. SMITH, "Rico", directed the UC to East 33rd Street and Central Avenue in Cleveland, Ohio. SMITH further directed the UC to park in the lot at 3209 Central Avenue. Once there, SMITH exited the door of 3209 Central Avenue and entered the UC's vehicle. The UC purchased approximately .5 grams of fentanyl/cocaine from SMITH for $ 40.00. During the controlled buy, SMITH entered the undercover officer's vehicle and parceled out an amount of Narcotics from a baggie that contained a much bigger quantity. The drugs distributed to the UC were sent to the lab and tested positive for cocaine and fentanyl.

On May 19, 2020, an agent again posing as a drug user spoke with SMITH to set up another narcotics deal and was directed by SMITH to E.152 and Woodworth area. An investigation plan was formulated where in once SMITH was in the area, and assisting units were able, they would stop SMITH and arrest him based on an outstanding Warrant. On May 19, 2020, the agent, as instructed by Smith, went to the area of E.152 and Woodworth. SMITH, by phone, directed the agent to the of 1320 E.152. The agent told him SMITH he was on his way. A few minutes later a Jeep with Ohio plate GGU 4291 pulled next to the UC vehicle. Three males were in the Jeep; DARRELL DOUGLAS was the driver of the vehicle, DRESHAWN MADDOX was in the front passenger seat and KINDELL SMITH was in the rear passenger seat. The vehicle driven by DOUGLAS came to a stop right next to the undercover vehicle now occupied by 4 law enforcement officers along with Detective Griffis posing again as a drug buyer. SMITH rolled down his window and leaned out and knocked on the UC's driver side window. SMITH knocked and the agent rolled down the window and SMTH handed him a paper fold with suspected heroin. At that time another law enforcement officer in the UC vehicle rolled down his window and announced himself as the police and ordered all of the occupants of the jeep to show their hands. All the occupants of the vehicle in which SMITH, MADDOX and DOUGLAS were in began screaming "Go, Go Go. At this time another law enforcement vehicle pulled behind the Jeep with lights and sirens and then pulled alongside of the jeep. The Jeep, driven at this time by DARRELL DOUGLAS disregarded the commands by law enforcement and failed to heed the commands to stop and disregarded the lights and sirens and sped up and accelerated and eventually struck the driver side of law enforcement vehicle with its lights and sirens still activated thereby in an attempt to flee from law enforcement at the commands of his fellow co-defendants he created a situation where substantial risk of serious bodily injury to

another person existed. At this time Law enforcement officers could see SMITH, sitting in the rear passenger seat, and both ATF SA Briggs and ATF TFO Detective Kopchak observed SMITH shoving something, which was later determined to be a firearm described as Glock Firearm bearing serial number UVR897, under the front passenger side seat from the rear seat in an effort to hide or conceal the firearm from law enforcement. SMITH was given multiple commands to show his hands and he was not following any commands. Other agents and officers arrived on scene and SMITH was taken out of the rear seat of the vehicle. After all three of the occupants had been removed from the vehicle agents checked under the front passenger side seat from the rear seat where affiant saw SMITH just shortly before reach down to that exact area, a Glock bearing serial number UVR897 was located. The Glock was positioned with the muzzle facing the front of the vehicle as it would be from a rear seat passenger SMITH who placed the firearm under the seat. Agents had a hard time getting the firearm out from the front of the passenger side seat and could only do so by retrieving it by pulling it from under the seat in the rear area. The gun was loaded with 6 rounds of 40. Caliber ammunition. A bag of suspected heroin was located where SMITH was sitting along with a red I-Phone. Several bags of marijuana on the passenger side floorboard. MADDOX had a plastic bag sticking out of his jeans pants pocket which was determined to be crack cocaine and another bag of pink pills which were fentanyl pills. DOUGLAS had a large sum of money on his person. When asked by Law enforcement how much money DOUGLAS had on him DOUGLAS stated around two thousand. The money was counted, and it was $ 2,280 dollars. All three males, SMITH, DOUGLAS, MADDOX were conveyed to Cuyahoga County jail where they were booked and housed.

During the time that SMITH and DOUGLAS were housed at the county jail agents were monitoring jail calls that were placed in Cuyahoga County jail by SMITH and DOUGLAS. On

May 21, 2020, SMITH made a jail call from the Cuyahoga County Jail and had a discussion with a person where he made the following statements: "Hey look, my name Kindell, I'm that ni##a he was in the car with, ya hear me? That gun, that dope all that shit in the car, none of those ni##as had nothing to do with it"; "These ni##as that was in the car with me . . . I guess they putting my shit in them ni##as. I'm trying to free them ni##as, so my ni##as can get out and do what I need them to do for me."; when reminded on the phone call by the other participant that Smith was not allowed to be around none of that shit "(guns and drugs) SMITH stated "I don't give a fuck about none of that shit. That ain't nothing but a gun and i had a gram of dope."; "I'm trying to clear my ni##as and let them out of here, so they can be out there for me to do what I need to do."; "there wasn't two guns in the car, it was one gun in the car, a Glock 9 with a clip that was my shit. And a gram of dope, all that shit was mine."

On or about and from May 28, 2020 through May 23, 2020, DOUGLAS engaged in multiple jail calls. During these calls DOUGLAS told an unknown female that DOUGLAS, SMITH and MADDOX were at a friend's house when SMITH told DOUGLAS he needed to go hit a "Play", (This is a common slang for a drug deal). DOUGLAS gave further detail and stated that SMITH told him to drive to E.152 to for another "Play". DOUGLAS stated that when he pulled up next to a "Truck" (Undercover vehicle), SMITH leaned out and started to knock on the window. DOUGLAS stated that he could see police in the truck and even explained on the phone line that "SMITH served the police".

SMITH furthermore made a statement to State of Ohio Parole Officer Nicole Leligdon on May 26th, 2020, and among other things stated as follows: "Look, I don't see how they can charge me, the gun they got from me was inoperable anyways."

4

Lab results were returned from the narcotics that were seized during the arrest. The Cuyahoga County Regional Forensic Science Laboratory returned lab # 2020-002640. Affiant avers that the bag of suspected heroin that was located on the rear seat was positive for Fentanyl and 4-ANPP, the paper fold that SMITH gave to Det. Griffis was positive for Fentanyl and 4-ANPP. The suspected crack cocaine on MADDOX'S person was positive for crack cocaine and the pink pill on MADDOX'S person were positive for Fentanyl and 4-ANPP. SMITH knowingly possessed a firearm described as Glock Firearm bearing serial number UVR897 in furtherance of a drug trafficking crime, specifically those charged in Counts 1-4 of the indictment.

Search warrants were secured for the phones located. Ultimately SMITH's red phone which was located in the back seat of vehicle near where he, the heroin and the firearm were found. A cell-brite analysis was done and multiple photos and videos of SMITH with firearms and drugs and messages from and to SMITH regarding drug activity were located. One specific photo which was found to have been established on his phone on May 18, 2020, the day before the arrest of SMITH and the conduct just described was a photo of SMITH in possession of the e red cell phone and the firearm found in the car where SMITH was seen reaching.

## II.     CONTROLLING LAW

Defendant is charged in Count 1 with Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, 21 U.S.C. § 846. To sustain its burden of proof for this crime, the United States must prove all of the following elements beyond a reasonable doubt:

| Count 1:  Title 21 U.S.C. § 846: Drug Conspiracies |
| --- |
| 1: Two or more persons conspired, or agreed, to violate federal drug laws; and |
| 2: The Defendant knowingly and voluntarily joined the conspiracy. |

Sixth Circuit Pattern Criminal Jury Instructions, 2019 Edition.

Defendant is charged in Count 2 with Possession with Intent to Distribute Controlled Substances, 21 U.S.C.§§ 84l(a)(1), (b)(l)(C) and 18 U.S.C § 2. To sustain its burden of proof for this crime, the United States must prove all of the following elements beyond a reasonable doubt:

| **Counts 2: Title 21 U.S.C. § 841: Distribution of Controlled Substances** |
| --- |
| 1: The defendant distributed a controlled substance to another person; and |
| 2: The defendant knew the substance was a controlled substance; |
| 3: The defendant knowingly and intentionally distributed the controlled substance |

Defendant is charged in Count 3 with Possession with Intent to Distribute Controlled Substances, 21 U.S.C.§§ 84l(a)(1), (b)(l)(C) and 18 U.S.C § 2. To sustain its burden of proof for this crime, the United States must prove all of the following elements beyond a reasonable doubt:

| **Counts 3: Title 21 U.S.C. § 841: Possession with the Intent to Distribute Controlled Substances** |
| --- |
| 1: The defendant possessed a controlled substance; and |
| 2: The defendant knew the substance was a controlled substance; and |
| 3:. Defendant intended to distribute the controlled substance |

Defendant is charged in Count 6 with Possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924 (c). To sustain its burden of proof for this crime, the United States must prove all of the following elements beyond a reasonable doubt:

| **Count 6**<br>**Title 18 U.S.C. § 924(c)(1)(A): Possessing a Firearm in Furtherance of a Drug Trafficking Crime** |
| --- |
| 1: Defendant committed a drug trafficking crime, as charged, which may be prosecuted in a court of the United States. |
| 2: Defendant knowingly possessed a firearm; and |
| 3: That Defendant's possession of the firearm was in furtherance of the crime, as charged. |

Sixth Circuit Pattern Criminal Jury Instructions, 2019 Edition, Section 14.01.

Defendant is charged in Count 7 with Being a felon in possession of a firearm and ammunition in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 922 (g). To

sustain its burden of proof for this crime, the United States must prove all of the following elements beyond a reasonable doubt:

| Count 7; Title 18 U.S.C. §§ 922(n) 924(c)(1)(A): Felon in possession of a firearm |
|---|
| 1: Defendant committed a drug trafficking crime, as charged, which may be prosecuted in a court of the United States. |
| 2: Defendant knew that he had been indicted of a crime punishable by imprisonment for more than one year; |
| 3: Following Defendant's indictment, Defendant knowingly possessed a firearm; and |
| 4: The specified firearm and/or ammunition crossed a state line prior to Defendant's possession. |

III.   **POTENTIAL EVIDENTIARY ISSUES**

   A.   DEFENDANT'S STATEMENTS, AND HIS COCONSPIRATORS' STATEMENTS ARE SUBSTANTIVELY ADMISSIBLE UNDER RULE 801(d)(2) ONLY WHEN OFFERED BY THE GOVERNMENT.

   1.   The Government can seek to admit Defendant's out-of-court statements, but Defendant cannot.

The Government intends to admit some of Defendant's out-of-court statements for the truth of the matters asserted, primarily on audio recordings of telephone communications, text messages, and recorded camera recordings and audio tape recordings.

Out-of-court statements made by a party-opponent are excluded from the definition of hearsay under Rule 801(d)(2), but this exception does not apply when the same statements are offered by the party himself. The party-opponent exception reflects the fact that the adversarial process allows the party-declarant to rebut his or her own admissions by testifying at trial. *See United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005). This exception does not, however, extend to a party's attempt to introduce his or her own statements through the testimony of other witnesses. *See United States v. Payne*, 437 F.3d 540, 547-48 (6th Cir. 2006). Precluding a defendant from eliciting inadmissible hearsay statements does not violate the Confrontation Clause. *See United States v. Ford*, 761 F.3d 641 (6th Cir. 2014).

Therefore, the Government respectfully requests that the Court prohibit defendant from introducing any of his out-of-court statements at trial.

    2.    <u>Defendant was engaged in a trafficking conspiracy, and so his coconspirators' statements are similarly admissible for their truth, but only when the Government offers them.</u>

The Government also intends to offer the statements made by Defendant's coconspirators. In particular, the Government will offer phone calls between a co-defendant Darrell Douglas and others discussing the facts and occurrences as the conspiracy continues; namely jail calls of Douglas. As with Defendant's own statements, his coconspirators' out-of-court statements are, when offered by the Government, not hearsay. *See* Fed. R. Evid. 801(d)(2)(E). This rule applies regardless of whether the conspiracy at issue has been charged in the indictment. *United States v. Ellis*, 156 F.3d 493, 497 (3d Cir. 1998) ("The law is well settled that out-of-court statements may be admissible under Rule 801(d)(2)(E) even if the defendant is not formally charged with any conspiracy in the indictment."). In the instant case, the defendant has been charged with conspiracy. Furthermore, the two indicted co-conspirators have each pleaded guilty to the same conspiracy.

Moreover, the rule also applies to conversations between a coconspirator and a third party. *See United States v. Westmoreland*, 312 F.3d 302, 309-10 (7th Cir. 2002). In this matter, a conspiracy has been charged, and so the statements of coconspirators would be admissible as evidence in furtherance of that conspiracy.

A statement falls within the Rule 801(d)(2)(E) coconspirator exclusion if the Government shows "(1) that a conspiracy existed, (2) that [Defendant] was a member of the conspiracy and, (3) that the hearsay statement was made in the course and in furtherance of the conspiracy"— together, the *Enright* showing. *See United States v. Wright*, 343 F.3d 849, 866 (6th Cir. 2003)

(citation omitted); *United States v. Benson*, 591 F.3d 491, 502 (6th Cir. 2010) (same); *see generally United States v. Enright*, 579 F.2d 980, 986-87 (6th Cir. 1978).[1]

The Court determines whether the Government has proved these facts by a preponderance of the evidence under Federal Rule of Evidence 104(a). *See United States v. Tocco*, 200 F.3d 401, 420 (6th Cir. 2000). Accordingly, the Court "may consider hearsay" and other non-privileged evidence that would otherwise be inadmissible. *Bourjaily v. United States*, 483 U.S. 171, 178 (1987). The Court may even consider the "statements sought to be admitted" under Rule 801(d)(2)(E), *id.* at 181, though the Government must provide "sufficient independent and corroborating evidence" of the conspiracy, *United States v. Smith*, 320 F.3d 647, 654 (6th Cir. 2003).

Courts in this Circuit commonly "admit the hearsay statements subject to a later ruling that the government has met its burden." *See id.* (citing *United States v. Vinson*, 606 F.2d 149, 153 (6th Cir.1979) and *Trepel v. Roadway Express, Inc.*, 194 F.3d 708, 716 (6th Cir.1999)). This is a rule the Sixth Circuit has consistently followed for decades. *See, e.g.*, *United States v. Lamar*, 466 F. App'x 495, 498 (6th Cir. 2012); *United States v. Lora*, 210 F.3d 373 (6th Cir. 2000); *United States v. Castro*, 908 F.2d 85, 91 (6th Cir. 1990).

Here, the conspiracy's existence and Defendant's membership is well documented by the statements themselves and by ample corroborating evidence. The corroborating evidence here includes the drugs purchased in the May 19, 2020 controlled buy where all three co-defendants

---

[1] Rule 801(d)(2)(E) coconspirator statements are "categorically non-testimonial and also within a 'firmly rooted' exception to the hearsay rule. Therefore, the Confrontation Clause does not bar their admission." *United States v. Tragas,* 727 F.3d 610, 615 (6th Cir. 2013) (internal citations omitted).

were present and involved in the sale to the undercover and more so have since pleaded guilty to their substantive and conspiratorial involvement.

The evidence will also show that the statements were "made in the course and in furtherance of the conspiracy." *See Wright*, 343 F.3d at 866. The conspiracy was ongoing throughout the period of the statements at issue. Such statements "can take many forms," including efforts to conceal a scheme or statements or statements "not 'exclusively, or even primarily, made to further the conspiracy.'" *Tocco*, 200 F.3d at 419 (citation omitted). Many of the statements concerned the presence, possession of and existence of a firearm. All of the statements were at least partly in furtherance of the conspiracy.

Accordingly, the Government submits that the proffered coconspirator statements are admissible under Rule 801(d)(2)(E).

B. ADMISSIBILITY OF RECORDINGS AND TRANSCRIPTS

The United States will introduce audio and video recordings of conversations between Defendant and an undercover officer posing as a drug buyer, and between Defendant and coconspirators, as noted above. The government may seek to admit the transcripts as exhibits for the jury.[2] The Sixth Circuit reviewed the standards for admission of "composite" tape recordings and transcripts in the cases *United States v. Scarborough*, 43 F.3d 1021, 1024 (6th

---

[2] Even absent a stipulation by the parties, the Sixth Circuit has repeatedly affirmed the validity of this procedure, so long as there is a preliminary foundation as to the preparation and accuracy of the transcripts. *United States v. West*, 948 F.2d 1042, 1044 (6th Cir. 1991). This is so, especially when accompanied by a cautionary instruction that the recording, and not the transcript, is the evidence to be considered by the jury. See Pattern Criminal Jury Instructions, U.S. Sixth Circuit District Judges Association (2019), Section 7.17. In the instant case, a reviewing agent has compared the transcripts with the recorded conversations and will testify that the transcripts are a fair and accurate transcription of the various conversations.

Cir. 1994) and *United States v. Segines*, 17 F.3d 847, 854 (6th Cir. 1994).[3] As noted in *Scarborough* at 1024:

> "It is well settled that the admission of tape recordings at trial rests within the sound discretion of the trial court." *United States v. Robinson*, 707 F.2d 872, 876 (6th Cir. 1983). In order to be admissible the district court must determine whether the tapes are "audible and sufficiently comprehensible for the jury to consider the contents." *Robinson*, 707 F.2d at 876. The district court abuses his discretion only "where the unintelligible portions of a tape recording are so substantial that the recording as a whole is rendered untrustworthy." *United States v. Scaife*, 749 F.2d 338, 345 (6th Cir. 1984).

The admission of audio and video recordings in evidence is subject to the rules of evidence generally. Accordingly, a proper foundation must be laid for their admission, and the recordings must be relevant and not privileged. Where practical, the original recordings should be used, pursuant to Fed. Rule 1002, and when telephone conversations are involved, evidence should be offered as to the correct telephone number, Rule 901(b)(6). *United States v. Watson*, 594 F.2d 1330, 1335 (10th Cir.), *cert. denied, Brown v. United States*, 444 U.S. 840 (1979). However, under Fed. Rule 1003, a duplicate is admissible to the same extent as an original unless there is a genuine question about the authenticity of the original or it would be unfair to admit the duplicate. The Sixth Circuit has discussed what necessary foundation for a tape recording is:

> While we have not in our prior cases indicated precisely what foundation is necessary to admit audiotapes where the challenge is to their admission generally, other circuits have alternately held that the district court must be satisfied that the recording is accurate, authentic, and generally trustworthy, that simply required is proof that the tape recording accurately reflects the conversation in question, or that a proper foundation may be established in two ways: a chain of custody… or

---

[3] A "composite" recording is one in which only relevant portions of a conversation are presented with the non-pertinent portions of the conversation being removed. The government may admit only excerpts of some recordings, but will make clear when the recordings have been excerpted.

11

alternatively, other testimony could be used to establish the accuracy and trustworthiness of the evidence.

*United States v. DeJohn*, 368 F.3d 533, 542 (6th Cir. 2004) (citations and quotation marks omitted).

      C.      USE OF "INEXTRICABLY INTERTWINED" OR OTHERWISE ESSENTIAL *RES GESTAE* EVIDENCE, OR IN THE ALTERNATIVE 404(B) EVIDENCE

The United States likewise intends to introduce testimony through the Government informant that, prior to the dates charged in the indictment, Defendant possessed the firearm in question for Counts 6 and 7 and furthermore that the defendant engaged in conversations and possessed items consistent with the drug trade. In fact, the United States, through discussion with defendant's counsel believes that there will be a defends offered that the firearm found does not belong, was not controlled by Smith nor did Smith have anything to do with that firearm. Yet, the Government intends to introduce evidence, in the forms of photos found on Smith's p[hone, showing him in possession of a firearm that looks exactly like the firearm in question and text message communications clearly showing that Smith routinely discussed the transfer, distribution and possession of both drugs and firearms. The United States submits that this evidence is relevant and admissible because it is inextricably intertwined or otherwise *res gestae* background evidence essential for the jury to understand the underlying events.

The Sixth Circuit has deemed that Rule 404 of the Federal Rules of Evidence does not bar "background" or res gestae evidence. In *United States v. Hardy*, the Sixth Circuit announced, "[t]his court has previously recognized the propriety of introducing 'background' evidence. Such evidence, often referred to as 'res gestae' does not implicate Rule 404(b)." 228 F.3d 745, 748 (6th Cir. 2000) (citing *United States v. Buchanan*, 213 F.3d 302, 311 (6th Cir. 2000). The *Hardy* court then explained:

> Rather, the very definition of what constitutes background evidence contains inherent limitations. *Buchanan, Paulino* and other cases dealing with this issue teach that background or *res gestae* evidence consists of those other acts that are inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense.
>
> Proper background evidence has a causal, temporal or spatial connection with the charged offense. Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense.

228 F.3d at 748 (emphasis added) (citing 2 Jack B. Weinstein, Margaret A. Berger & Joseph M. McLaughlin, *Weinstein's Federal Evidence*, § 404.20[2][c] and [d]; *United States v. Weinstock*, 153 F.3d 272, 277 (6th Cir.1998); *United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir.1995); *United States v. Townsend*, 796 F.2d 158, 162 (6th Cir.1986); *United States v. Cunningham*, 103 F.3d 553, 557 (7th Cir.1996); and Jennifer Y. Schuster, *Uncharged Misconduct Under Rule 404(b): The Admissibility of Inextricably Intertwined Evidence,* 42 U. Miami Law Review 947 (March/May 1998) (*See United States v. Rice*, 2004 WL 333800 (6th Cir. 2004).

"The jury is entitled to know the 'setting' of a case. It cannot be expected to make its decision in a void--without knowledge of the time, place and circumstances of the acts which form the basis of the charge." *United States v. Roberts*, 548 F.2d 665, 667 (6th Cir. 1977). *See also*, *United States v. Vincent*, 681 F.2d 462, 465 (6th Cir. 1982). Further, prosecutors are permitted to provide the jury with a "natural narrative of events," and are not limited to a "sanitized recounting of the facts." *United States v. Gibbs*, 797 F.3d 416, 424 (6th Cir. 2015) (internal quotation marks omitted). Therefore, evidence of background, res gestae, or a continuing pattern of illegal activity is properly admissible as it is not precluded by Rule 404(a) of the Federal Rules of Evidence.

The evidence at issue here is properly admitted because it possesses causal and temporal proximity to the conspiracy and drug possession and distribution alleged in Counts 1-3 and furthermore the use and possession of firearm counts in Counts 6 and 7of the indictment, because it completes the story of the specific transaction alleged in that Count, and because it provides the jury context as to what occurred on May 19, 2020. Further, the context of the informant's prior dealings with Defendant, and the debt owed to Defendant, is crucial for the jury to properly assess the informant's credibility, is essential to the government's proof, and needed for the jury to properly deliberate with all appropriate evidence. It is "directly probative of the charged offense," "forms an integral part of witnesses' testimony," and is necessary to "complete[] the story of the charged offense." *Hardy*, 228 F.3d at 748.

The aforementioned evidence is also inextricably intertwined with the underlying case. In *United States v. Barnes*, the Sixth Circuit held:

> [T]he Court of Appeals explained that Rule 404(b) does not apply where the challenged evidence is "inextricably intertwined" with evidence of the crime charged in the indictment. When the other crimes or wrongs occurred at different times and under different circumstances from the offense charged, the deeds are termed "extrinsic." "Intrinsic" acts on the other hand, are those that are part of a single criminal episode.

49 F.3d 1144, 1149 (6th Cir. 1995) (citing *United States v. Torres*, 685 F.2d 921, 924 (5th Cir. 1982); *see also United States v. Henderson*, 626 F.3d 326 (6th Cir. 2010) ("Where the challenged evidence is 'intrinsic' to, or 'inextricably intertwined' with evidence of, the crime charged, Rule 404(b) is not applicable"); *United States v. Daulton*, 266 F. App'x 381 (6th Cir. 2008) (citation omitted) ("Evidence is inextricably intertwined when the charged conduct and the uncharged conduct 'are part of the single criminal episode or the other acts were necessary preliminaries to the crime charged.'"); *United States v. Rozin*, 664 F.3d 1052 (6th Cir. 2012) (in tax fraud case, evidence of prior year activities not 404(b), but rather intrinsic evidence); *United*

*States v. Monsour*, 893 F.2d 126 (6th Cir. 1990) (investigative link evidence, such as the defendant acting "suspiciously" at another bank branch a few days prior to the robbery, was intrinsic evidence). Therefore, when other acts are "intrinsic" to charged conduct or part of a single criminal episode they are "inextricably intertwined" and not subject to a Rule 404(b) analysis.

In other instances, evidence is intrinsic when exclusion would leave a "chronological or conceptual void in the story of the crime," *United States v. Ojomo*, 332 F.3d 485, 488-89 (7th Cir. 2003), or when the acts complete the story of the crime on trial. *United States v. Senffner*, 280 F.3d 755, 764 (7th Cir. 2002), or explains the circumstances of the case. *United States v. Holt*, 460 F.3d 934 (7th Cir. 2006); *cf. United States v. Poulsen*, 655 F.3d 492 (6th Cir. 2011) (evidence from defendant's related separate obstruction of justice case admissible as 404(b) consciousness of guilt evidence in his securities case); *United States v. Martinez*, 430 F.3d 317 (6th Cir. 2005) (evidence that part of the conspiracy is not "other acts" evidence). In this case, the fact that the informant had previously engaged in a drug transaction with Defendant, and still owed the defendant money at the time of the controlled buy on September 26, 2019, is essential evidence needed for the jury to consider. During the recorded conversations of the September 26, 2019 controlled buy – which the Government intends to introduce in its case in chief – Defendant and the informant discuss the drug debt, and how much money the informant has to purchase new, additional drugs. Evidence of the prior transaction with defendant provides context to the recordings of his charged conduct and provides the jury with the necessary facts to understand the proceedings of the September 26, 2019 controlled buy. It completes the story of the crime on trial, and its absence would leave a conceptual void in the story. *Senffner*, 280 F.3d at 764; *Ojomo*, 332 F.3d at 488-89. It is also necessary to explain the circumstances of the case.

*Holt*, 460 F.3d at 934.

      D.      <u>THE JURY SHOULD NOT BE INFORMED OF THE CONSEQUENCES OF ITS VERDICT</u>

If convicted in this case, Defendant faces a lengthy, mandatory term of imprisonment if convicted of the charged offenses. Defendant may endeavor to educate the jury on the potential ramifications of a guilty verdict in this case with the hope of obtaining jury nullification. The Sixth Circuit has firmly rejected such a strategy: "[U]nless juries have roles in sentencing, such as in capital sentencing proceedings, juries should be instructed not to consider defendants' possible sentences during deliberation." <u>United States v. Chesney</u>, 86 F.3d 564, 574 (6th Cir. 1996). <u>See also</u> <u>United States v. Stotts</u>, 176 F.3d 880, 886 (6th Cir. 1999) ("the Supreme Court has held that juries should be instructed not to consider a defendant's possible sentence unless the jury has a specific role in sentencing"). The Supreme Court explained the reasoning behind insulating the jury from possible penalties in a case.

> The principle that juries are not to consider the consequences of their verdicts is a reflection of the basic division of labor in our legal system between judge and jury. The jury's function is to find the facts and to decide whether, on those facts, the defendant is guilty of the crime charged. The judge, by contrast, imposes sentence on the defendant after the jury has arrived at a guilty verdict. Information regarding the consequences of a verdict is therefore irrelevant to the jury's task. Moreover, providing jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion.

<u>Shannon v. United States</u>, 512 U.S. 573, 579 (1994). Accordingly, Defendant should not be permitted to distract and confuse the jury by inviting the jury to decide the issue of guilt with the knowledge of this sentencing issues or collateral immigration consequences.

Defendants often infuse sentencing into the trial under the guise of cross-examining a cooperating witness. For example, a defendant may ask the witness about the maximum penalty for the charged offense, may compare a cooperator's plea agreement to the defendant's status, or

16

use the cooperator to contrast a defendant's perceived situation, i.e., "You pleaded guilty because you didn't want a trial to bankrupt you, cause family strain, etc."

The Government moves this Court, in limine, to prohibit Defendant from eliciting any testimony or making any argument that may directly or indirectly inform the jury of sentencing options or endeavor to engender sympathy for Defendant. In so moving, the Government is not seeking to prohibit Defendant from questioning cooperating witnesses about potential bias from their plea agreements. However, the Government is asking the Court to direct counsel to conduct such examination so as to truly question about bias and not merely inform the jury of the potential sentences Defendant faces.

## IV. GOVERNMENT REPRESENTATIVE AND SEPARATION OF WITNESSES

The United States respectfully requests that this Court issue a separation-of-witness order pursuant to Federal Rule of Evidence 615 and designates ATF TFO Donald Kopchak as its representative in this case to be present at counsel table throughout the trial. His presence in the courtroom during trial is essential to the presentation of the United States' case. *See* FED. R. EVID. 615(b) (specifically excluding from a sequestration order "an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney"); FED. R. EVID. 615(c) (providing an additional exception for essential witnesses).

## V. CONCLUSION

The Government anticipates that the parties will confer on the issues identified above, and further anticipates that the parties may be able to resolve any disputes without the Court's intervention. For any issues on which disputes remain and arise at trial, for the foregoing

17

reasons, the Government requests that the Court rule in accordance with the above points and authorities.

                Respectfully submitted,

                MICHELLE M. BAEPPLER
                First Assistant United States Attorney

By:   /s/Robert F. Corts
       Robert F. Corts (OH: 0041432)
       Assistant United States Attorney
       United States Court House
       801 West Superior Avenue, Suite 400
       Cleveland, OH 44113
       (216) 622-3957
       (216) 522-7499 (facsimile)
       Robert.Corts@usdoj.gov