IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **KINDELL SMITH,** | Case No.: 1:20-CR-812 |
| | 1:25-CV-234 |
| **Defendant/Petitioner,** | |
| -vs- | JUDGE PAMELA A. BARKER |
| **UNITED STATES OF AMERICA,** | |
| | MEMORANDUM OPINION & ORDER |
| **Plaintiff/Respondent** | |

This matter is before the Court upon Defendant-Petitioner Kindell Smith's ("Smith" or "Defendant") *pro se* Motion to Vacate, Set Aside or Correct Sentence pursuant to Title 28, U.S.C. § 2255 filed on February 5, 2025 ("Defendant's Motion"). (Doc. No. 167.) On March 24, 2025, Plaintiff/Respondent United States of America filed the Government's Response to Defendant's Motion ("the Government's Response"). (Doc. No. 170). Although given until April 23, 2025 to file a Reply in support of Defendant's Motion, Smith did not do so. Accordingly, Defendant's Motion is ripe for a decision and for the following reasons, it is DENIED.

**I. Background**

    **A. Indictment**

On December 3, 2020, a federal grand jury indicted Smith on five counts: 1.) Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. § 846 (Count 1); 2.) Distribution of a Controlled Substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Count 2); 3.) Possession with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and 18 U.S.C. § 2 (Count 3); 4.) Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 6); and

5.) Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. §§ 922(g)(1) ad 924(a)(2) (Count 7). (Doc. No. 16.)

### B. Jury Trial

Jury trial commenced on July 6, 2022. The Government presented the following evidence at trial.[1] Detective Griffis, a City of Solon police officer assigned to the SEALE Narcotics Tasks Force as a narcotics detective, started his investigation into Smith on April 9, 2020 by assisting the Bedford Police Department with a fatal overdose death. The investigators were able to gain access into the decedent's phone and discovered text messages to a number that was listed in the decedent's phone as Rico Dude Man. Based upon the text messages, investigators determined that there was a possible dealer that had delivered the heroin to the decedent. Detective Griffis called the telephone number and arranged to meet the person who was answering the phone as Rico Dude Man, to buy drugs. Detective Griffis was instructed to go to East 33rd and Central in Cleveland and as he started to get closer to the buy location, Rico Dude Man called him and directed him to a specific parking lot near some apartment buildings on East 33rd and Central. Detective Griffis met Rico Dude Man, identified in Court as Smith, and Smith sold Detective Griffis .47 grams of a drug mixture containing cocaine, fentanyl, and a synthetic form of fentanyl.

On May 19, 2022, Detective Griffis received a call from Rico Dude Man who said that he had something that he wanted Detective Griffis to try and to meet up with him. It was after the first controlled buy on April 14, 2022 described above, that investigators were able to identify Rico Dude Man as Smith. So, when Detective Griffis received the call from Smith on May 19, 2022, he entered

---

[1] The Court's recitation of the evidence adduced at trial is not intended to be exhaustive. Rather, the Court sets forth only that evidence necessary for the resolution of Defendant's Motion.

Smith's name into a database and saw that other agencies were looking at Smith, particularly ATF. Detective Griffis immediately contacted detectives with the RAVEN unit who were working with the ATF to see if they wanted him to meet up with Smith to arrest him. They did, so pursuant to a plan they formulated together, Detective Griffis acted as an undercover agent operating an unmarked black crew cab pickup truck with slightly tinted windows, and ATF Specials Agent Gerrod Briggs and Donald Kopchak and a Cleveland Police detective rode with him in his vehicle to conduct a buy bust; a controlled buy where law enforcement officers arrest the drug trafficker immediately after the sale. Other officers were also in the area to assist with the buy bust of Smith. At the place where Detective Griffis had been instructed by Smith to meet him, Detective Griffis stopped his vehicle, and a Jeep pulled up and Smith rolled down the back window of the Jeep from his position as the sole passenger in the back seat. When about half of Smith's body was outside of the Jeep, Smith knocked on the driver's window of Detective Griffis's unmarked vehicle, saying Detective Griffis's name. Smith then handed a fold that contained powder to Detective Griffis and then Agent Briggs rolled down his window and identified himself as law enforcement. After that, the Jeep took off and within just a few seconds, crashed into a police vehicle. Detective Griffis gave the fold provided to him by Smith to TFO Kopchak and later testing revealed that the powder in the fold contained a mixture of heroin, fentanyl, and a synthetic form of fentanyl.

After the crash, ATF Special Agents Briggs and Kopchak saw Smith, the sole rear passenger, lean down across the Jeep's backseat area and reach toward the floorboard under the front passenger seat and one of the agents testified that he saw Smith gripping an object in his hand as he did so. The driver and front-seat passenger of the Jeep, as well as Smith, were removed from the Jeep and searched, and the Jeep was searched. Agents discovered a Glock 9mm handgun with a loaded, extended .40-caliber magazine wedged underneath the front passenger seat, which was inaccessible

:

from the front of the Jeep. On the back seat where Smith was sitting, agents found additional drugs consisting of heroin, fentanyl, and a synthetic form of fentanyl, and Smith's cell phone. Agents also found more drugs and cash elsewhere in the Jeep and in the possession of its other occupants/Smith's co-defendants. Later, agents obtained jail call recordings of Smith in which Smith stated that the handgun and drugs found were his and that his co-defendants had nothing to do with them.

After a three-day trial, Smith was convicted on all counts with which he was charged. This Court sentenced Smith to 86 months' imprisonment each on Counts 1, 2, 3, and 7, to be served concurrently, and 60 months' imprisonment on Count 6, to be served consecutively to Smith's sentence on Counts 1,2, 3 and 7, for a total of 146 months' imprisonment. The Court also imposed three years of supervised release.

### C. Direct Appeal

Smith appealed his convictions to the Sixth Circuit Court of Appeals and raised three issues. First, Smith argued that testimony linking him to a fatal drug overdose, testimony regarding law enforcement's investigation into him as a known drug dealer and gang member, and social media posts appearing to show him as a gang member violated Federal Rule of Evidence 404. The Court of Appeals rejected this argument. First, as to Griffis's testimony regarding the fatal overdose, the Court of Appeals found that it was *res gestae* evidence in that it completed the story of the charged offenses by explaining why law enforcement began investigating Smith and how they had obtained his phone number. Accordingly, the Court of Appeals found that this court did not plainly err in allowing this testimony because proper *res gestae* evidence does not implicate Rule 404(b). Second, as to the testimony and exhibits presented at trial concerning law enforcement's prior knowledge of Smith's drug trafficking and gang-related activities, including the social media posts, the Court of Appeals found that this evidence, too, constituted *res gestae* evidence because it completed the

narrative of the charged offenses and was properly admitted. The Court of Appeals also concluded that no prejudice resulted from the admission of any of this challenged evidence and even if the challenged evidence was improperly admitted in violation of Rule 404(b), Smith had failed to demonstrate a reasonable probability that it affected the outcome of his trial.

Smith's second argument was that this court committed error requiring reversal by giving his stipulated jury instructions. Despite the fact that Smith had stipulated to the felon-in-possession jury instruction that included the names and nature of Smith's prior felony convictions which would implicate the invited-error doctrine and preclude appellate review, the Court of Appeals went on to conclude that whether it declined review or reviewed for plain error, the end result would be the same, to wit: Smith could not demonstrate either that his substantial rights were affected or that a grave miscarriage of justice had resulted from the purported error. The Court of Appeals explained that the evidence at trial showed that Smith was the only person who had access to the firearm recovered in the Jeep, reached toward the area where the firearm was found shortly after the Jeep crashed, and admitted in recorded jail calls that the firearm was his. The Court of Appeals also noted that this Court had given a limiting instruction to ensure that the jury would not rely on any evidence of other crimes or wrongs for propensity purposes and therefore, Smith had not demonstrated that he was prejudiced by the jury instruction.

Smith's third argument was that the evidence presented at trial was insufficient to sustain his conviction for possession of a firearm in furtherance of a drug trafficking crime. Specifically, Smith argued that he was not seen with the firearm while providing the drugs, nor was the seized firearm quickly and easily available for his use. Considering or viewing the evidence holistically, and setting forth the evidence it so considered, the Court of Appeals concluded that a jury could rationally find that Smith possessed the firearm in the Jeep for the purpose of aiding his drug trafficking.

:

Accordingly, the Court of Appeals affirmed Smith's convictions. On February 5, 2025, Smith filed Defendant's Motion, contending that he is entitled to relief based upon ineffective assistance of counsel. Smith asserts that his counsel was ineffective for six reasons: 1.) his counsel did not file a motion to suppress the information on the decedent's cell phone or the cold calls made on the decedent's cell phone that were video and audio recorded without a warrant; 2.) his counsel did not request in discovery the laboratory and toxicology reports of the decedent to prove he was not responsible for her death; 3.) his counsel did not heed Smith's advice that he was being over charged and that his indictment was "multiple" and "he could only be charged with one course of conduct"; 4.) he was charged with conspiracy under § 846 with a predicate charge of distribution with intent under 841(A)(1)(b)(1) and his attorney did not know that attempt crimes like conspiracy are not controlled substance offenses; 5.) his counsel stipulated to the felon in possession jury instruction that included a reference to a prior bad act; and 6.) generally that his attorney was ineffective prior to trial.

## II.  Standard of Review

A federal prisoner may attack the validity of his sentence by filing a motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 in the district court where he was sentenced. Section 2255 sets forth four grounds upon which a federal prisoner may state a claim for relief: "[1] the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] [the sentence] is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a).

To prevail under § 2255, "a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea

or the jury's verdict." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). "Relief is warranted only where a petitioner has shown 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Id.* (quoting v. *United States Davis*, 417 U.S. 333, 346 (1974)).

Claims of ineffective assistance of counsel are appropriately raised in a section 2255 motion, and a petitioner "must prove his allegation that his lawyers were constitutionally ineffective by a preponderance of the evidence." *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). The well-established federal law used for assessing ineffective assistance of counsel claims is the framework set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* imposes a two-prong test for determining whether counsel was constitutionally ineffective. *Wiggins v. Smith*, 539 U.S. 510, 521 (2003).

Under the first prong, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. In other words, a court assessing an ineffective assistance claim must "determine whether, in light of all the circumstances, the [challenged] acts or omissions were outside the wide range of professionally competent assistance." *Id*. at 690. When making this assessment, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* Under the second prong, the defendant must show that his counsel's error prejudiced him. *Id*. at 691-92. To prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

:

Under *Strickland*, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691; *accord, e.g., Wiggins,* 539 U.S. at 521–22. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91. As the Sixth Circuit has explained, "[t]he deference a reviewing court must give to counsel's strategic decisions depends on the adequacy of the investigation underlying counsel's decisions." *Smith v. Jenkins*, 609 Fed. Appx 285, 292 (6th Cir. 2015) (citing *Wiggins*, 539 U.S. at 521). Failure to make such an investigation "must be supported by a reasoned and deliberate determination that investigation was not warranted." *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).

When a factual dispute arises in a § 2255 proceeding, an evidentiary hearing is required "'to determine the truth of the petitioner's claims.'" *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)). The burden borne by a § 2255 petitioner to obtain a hearing is not onerous. *See Smith v. United States*, 348 F.3d 545, 551 (6th Cir. 2003) (citing *Turner*, 183 F.3d at 477). But a petitioner is not entitled to an evidentiary hearing if he has not alleged any facts that, if true, would entitle him to federal habeas relief. *See McSwain v. Davis*, 287 Fed. Appx 450, 458 (6th Cir. 2008); *Amr v. United States*, 280 Fed. Appx 480, 485 (6th Cir. 2008) (holding that an evidentiary hearing was "unnecessary" where there was "nothing in the record to indicate that [the petitioner] would be able to prove his allegations" at a hearing). *See also Napier v. United States*, 1993 WL 406795 at *2 (6th Cir. Oct. 8, 1993) ("To be entitled to a hearing, the prisoner must set forth detailed factual allegations which, if true, would entitle him to relief under § 2255.") (citing *Machibroda v. United States*, 368 U.S. 487, 496 (1962)). *See also Valentine*, 488 F.3d at 334 (finding that the burden is met where the petitioner "offers more

:

than a mere assertion of his innocence; he presents a factual narrative of the events that is neither contradicted by the record nor 'inherently incredible.'")

Moreover, a hearing is not necessary when a petitioner's claims "'cannot be accepted as true because they are contradicted by the record, inherently incredible, or [are] conclusions rather than statements of fact.'" *Valentine,* 488 F.3d at 334 (quoting *Arrendondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). Where, as here, the judge considering the § 2255 motion also presided over the trial, the judge may rely on her recollections of the trial. *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 n.4 (1977)).

**III. Analysis**

    **A. Smith's assertion that counsel was ineffective for not filing a motion to suppress the evidence retrieved from the decedent's phone.**

As noted above, strategic decisions by counsel are given a strong presumption of reasonableness. Such strategic decisions include the decision whether to file certain motions. *See Stephens v. United States*, 2018 WL 1522080 at *3 (S.D. Ohio Mar. 28, 2018). Indeed, the Sixth Circuit has made clear that defense counsel is not required to file frivolous motions or make meritless arguments. *See Goff v. Bagley*, 601 F.3d 445, 469 (6th Cir. 2010); *United States v. Blough*, 2022 WL 16923966 at *6 (N.D. Ohio Nov. 14, 2022). Even if counsel should have filed a suppression motion, a petitioner is not entitled to relief absent proof that the motion would have been successful. *Howard v. Bouchard*, 405 F.3d 459, 480 (6th Cir. 2005).

As the Government correctly argues, Smith had no standing to suppress either the data on the decedent's phone or the cold calls that Detective Griffis made to him from that phone. A defendant has the burden of establishing his standing to challenge a search or seizure in violation of the Fourth Amendment. *United States v. Santgineto-Miranda*, 859 F.2d 1501, 1510 (6th Cir. 1988) (citing *Rakas*

*v. Illinois*, 439 U.S. 128 (1978).  To establish standing, a defendant must show that: (1) "he manifested a subjective expectation of privacy in the object of the challenged search;" and (2) "society is prepared to recognize that expectation as legitimate."  *United States v. Sangineto-Miranda*, 859 F.2d 1501, 1510(6th Cir. 1988) (citing *California v. Ciraolo*, 476 U.S. 207, 211 106 S.Ct. 1809, 90 L.Ed. 2d 210 (1986).  The Court agrees with the Government that Smith has failed to show standing to seek suppression of the data in, or cold calls made, from the decedent's phone, or an objectively reasonable expectation of privacy as to the phone and information contained therein.  Indeed, Smith could never show such standing to be successful on a motion to suppress he alleges he asked his attorney to file.  Accordingly, any such motion would have been frivolous and his lawyer's decision not to file such a motion does not constitute ineffective assistance of counsel.

As to Smith's argument that his counsel was ineffective for failing to obtain the laboratory and toxicology reports related to the deceased woman's death to show that he was not responsible for her death, the Court rejects this argument because: 1.) Smith was not accused of or charged with responsibility for her death; and 2.) the Sixth Circuit noted that Detective Griffis's mere mention of her death in detailing how he began investigating Smith was merely *res gestae* evidence and this Court did not err in failing to strike it and give a cautionary instruction to the jury.

Smith's argument that his counsel rendered ineffective assistance because he stipulated to the felon in possession jury instruction that included reference to a prior bad act does not provide a valid basis for granting his Motion.  As noted above, the Sixth Circuit addressed this issue or argument on Smith's direct appeal.  The Sixth Circuit found that Smith could not demonstrate either that his substantial rights were affected or that a grave miscarriage of justice had resulted from the purported error.  The Court of Appeals noted that this Court had given a limiting instruction to ensure that the jury would not rely on any evidence of other crimes or wrongs for propensity purposes and therefore,

Smith had not demonstrated that he was prejudiced by the jury instruction. Accordingly, this Court concludes that any purported error in his lawyer's stipulation to the felon-in-possession jury instruction did not affect his substantial rights or result in a grave miscarriage of justice, and Smith has not shown otherwise.

Smith's final assertions are that defense counsel was ineffective because: 1.) he failed to heed Smith's conclusion or advice that the indictment was multiple, and he could only be charged with one course of conduct; 2.) his attorney did not know that attempt crimes like conspiracy charges are not controlled substance offenses; and 3.) generally that his attorney was ineffective prior to trial. As the Government contends, these are mere assertions made by Smith that he does not support with any factual basis or argument. Succinctly stated, this Court agrees with the Government. Smith does not elaborate upon, or explain, or state any bases for these assertions. These mere assertions do not provide any factual or legal basis to conclude that Smith's counsel was ineffective to warrant granting Defendant's Motion. Indeed, for the foregoing reasons, the Court also finds that Smith is not entitled to a hearing on his Motion.

Accordingly, and for the reasons set forth above, Defendant's Motion is DENIED.

**IT IS SO ORDERED.**

Date: September 16, 2025

    *s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE

: